*Ruggles, O. J.
 

 (Dissenting).
 
 — The 8th section -* of the “ act concerning the Mohawk and Hudson Railroad Company,” passed the 16th April 1838, under which the lands were taken for the road, prescribes the duty of the appraisers in these words: “And the said appraisers shall assess the value of the land so proposed to be taken, and the damages the owners may sustain by taking their lands, by injury to buildings, and in the construction of such road, without any deduction on account of any real or supposed benefit which suck owner may derive from the construction of such road.
 

 
 *158
 
 In appraising the land and damages under this act, the appraisers have two duties to perform, which are distinct in their nature, although both are to be done at the same time, and certified in one certificate. One of these duties is the appraisal of the value of the land; the other is the assessment of the damages which the owners may sustain, over and above the value of the land. The land is to be valued as if it were to be appropriated to any other purpose. The amount of damages to the owner from the construction of the road (over and above the value of the land) may be composed of various items, according to the circumstances of the case. The appraisers may allow damages, because the road when constructed will obstruct the view from the owner’s dwelling, and thus render it less desirable as a residence; or because it will interfere with his access to some portion of his adjacent lands, or to his ordinary place of business; or because the road will obstruct or divert the water-courses or the natural drainings of his meadows lying near it; or because the road, when made, will interfere with the improvement of his adjacent lands for some valuable use to which they are naturally adapted, and to which they might have been advantageously applied, if the road had not been made.
 

 It is very obvious, that the amount of damages arising from these or other causes, may depend, in' a great degree, on the manner in which the road is to be constructed, and upon the extent to which it deprives the owner of the advantageous use and enjoyment of his adjacent lands. The appraisers cannot *adjust f the amount of compensation to the extent of the *- injury, without first knowing the plan on which the road is to be made, and the rights and privileges which are to be reserved to the owner, to enable him to continue in the beneficial enjoyment of his adjoining property. Whether the road interferes with the owner’s convenient access to his other lands, or to his place of
 
 *159
 
 business, may depend on the construction of a bridge or a viaduct, by which it may be easily and safely crossed. Whether it will obstruct the view from the owner’s dwelling may depend on the elevation of the grade. If there be reason to apprehend that the drainage of the owner's adjacent lands will be obstructed, that difficulty may be obviated, partially or wholly, by the construction of a culvert, or by a right reserved to the owner to cause a drain to be made under the road; or if the owner could sell his adjacent lands to a greater advantage, by making a street across the site of the road, the injury he might otherwise sustain by the road in that respect, might be avoided or diminished, by allowing the owner to lay out and open the street, and to remove all obstructions in the way of its use across the railroad.
 

 The railroad company have the right, most undoubtedly, of constructing their road in such a manner as to do the least injury to the land-owner, and to reserve to him such rights and privileges in the land taken, as are consistent with their use of that land, and his use of the adjacent lands. And if the plan of the road is exhibited and submitted to the appraisers, and the appraisement is founded on such plan, the company is bound and may be compelled to construct the road accordingly. The plan of the road, or the description of the mode in which it is to be constructed, and the rights reserved to the land-owner, may very properly be embodied in the award of the appraisers for the security of the landowner. This seems to have been done in the case under consideration, and the privilege of laying out the street across the railroad, of removing obstructions, of draining under the road, are not at all inconsistent with the fact previously stated, that the appraisal of the land and the assessment of the damages were made, without any deduction on *account of any real or supposed -* benefit which the land-owners might derive from the construction of the road.
 

 
 *160
 
 Let us suppose, that the construction of the railroad would have prevented the opening of the street, unless by the assent of the company, and the allowance of the privileges mentioned in the award, and that the land-owners would thereby have been deprived of the benefit of the street, and of the improved value of the adjacent lands, which the opening of the street would have occasioned. Under these circumstances, if the company could construct their road, in such manner and upon such terms, as not to prevent the opening of the street, and not to deprive the land-owners of any advantage arising therefrom, they were clearly right in doing so. The landowners have not a right to demand that the road should be made in such manner as to do them the most harm, for the purpose of enabling them to recover the highest damages.
 

 The return to the
 
 certiorari
 
 states expressly that the appraisers awarded to the owners the value of the land, and the damages they would sustain by taking the same, and in the construction of the road, “ without any deduction on account of any real or supposed benefit which the said owners might derive from the construction of the road.” The return cannot be contradicted here; it is conclusive, to show that the privileges which the award secures to the land-owners, were not allowed as any part of the compensation for the land, nor as any part of the real or supposed benefit which the owners might derive from the road; nor as a compensation for damages sustained. There is no ground for questioning the truth of the return in this respect, if we were allowed to question it at all. It is evident, that the privileges were allowed for the purpose of preventing the land-owners from sustaining damages, of to diminish their amount; in other words, to secure to the land-owners, after the railroad shall have been made, the enjoyment of part or all the advantages in the use of their adjacent lands which they would have had, if the railroad had not been made. This is entirely cqnsistent with the truth ^ of the return, with the *spirit of the statute, -* with public policy, and with justice and equity.
 

 It has been said, that the corporation cannot compel the land-owner to accept the benefit of' the privileges thus proffered. That is true; and so, if the corporation should construct a safe and convenient passage-way across their road, or an arched way under it, for the land-owner’s use, they could not compel him to accept the' benefit; but it would be a great defect in the judgment of the appraisers, in such case, to award him damages for crossing at a greater distance, or at a more inconvenient place.
 

 The error of the supreme court appears to me to consist in having assumed (contrary to the fact expressly stated in the award) that the full amount of damages was not allowed to the land-owners. The effect of the decision was, to require the company to pay damages for depriving the land-owners of advantages in the use of their adjacent lands, of which they whre not, in fact, deprived by the construction of the road, on conditions which the company had the right to impose and did impose on .themselves; and if the principle on which the judgment is affirmed be carried out, it will require these companies and the people of this state, whenever they have occasion to take private property for public use, to pay damages not sustained, or which may be avoided and prevented by conditions and stipulations annexed to the appropriation.
 

 It is a mistake, to say that it appears from the award, that the value of the easements allowed to the landowners has been deducted from the damages sustained by the construction of the road. It might as well be said, that when • a railroad company have the damages assessed, on condition that they shall construct a culvert or an arched way under the road, for the benefit and convenience of the land-owner, that the value of these
 
 *161
 
 [ *162 are deducted from the damages. That these easements may and ought to affect the amount of damages to be assessed, no one can deny: the assessment is made with reference to the injurious effect which the construction of the road, with these easements included, is to have upon the interest of the land-owner; but no one can truly assert that their value is deducted from the *damages sustained. If the passage-way is as convenient, after the making of the road as before, the owner has sustained no damage from its obstruction; and so, in relation to the privilege of making the street across the railroad in the present case, if it can be as well done, after-the railroad is made, as before, the land-owner has sustained no damage from that cause, and there is nothing therefore to be deducted; or, if the expense of the opening street is increased, or its advantages diminished, in some degree, by the railroad, the damage is to be graduated accordingly. It is on this principle that the appraisers appear to have made their assessment, and I am unable to perceive any error in it. _
 

 The easements and privileges reserved to the landowners do not affect the seizure of the lands by the corporation, after they have been appraised and paid for.
 
 (Whitbeck
 
 v.
 
 Cook,
 
 15 Johns. 483.) The statute itself gives to each land-owner the right of passing across the railroad for farming and other necessary purposes (§ 12). This is, of itself, an easement, and is not regarded by the act as a disturbance of the service conferred on the company by the preceding section. The estate which the company acquire is a fee-simple, subject to the easements.
 

 In the opinion delivered in the court below, it is stated, that “the object in reserving an easement to the original owners must have been, to procure its valuation at a reduced sum, and thus to save expense to the corporation.” This appears to me to be erroneous. The object was not to obtain the land taken at a reduced valuation, and the appraisers certify that they have appraised it at
 
 *162
 
 its full value. The object was, to avoid the occasioning of any unnecessary damage to the owner, consequent upon the taking of his land at its full value; and I can find nothing in the statute to prevent their doing so. It is not to be believed, that the legislature intended to compel the company, unnecessarily and against their own will, to take away from the owner the privilege of laying out a street across the railroad, and to pay damage for depriving him of a right which they did not want and could not acquire to themselves, and which they were willing to let him retain.
 

 * 1 fit? i ^The appraisers appear to me to have acted -* upon the true construction of the statute, and I have deemed it proper to state my reasons for dissenting from -the decision of my brethren in setting it aside, because it seems to me, to lead to very inconvenient and inequitable practical consequences.
 

 Judgment affirmed.